by him obtained against *S. Norwood*, in December 1807. From this decree *E. Norwood* appealed to this court.

As this last appeal was depending when the argument was had on the other appeal, the court delayed deciding on the latter until hearing an argument on the former. The former appeal was argued at the present term before CHASE, Ch. J. and BUCHANAN, NICHOLSON, and MARTIN, J. by

*Shaaff* for the Appellant, *(E. Norwood,)* and by *Harper* and *Magruder*, for the Appellee, *(S. Norwood.)*

THE COURT, on the first appeal, *decreed*, that the decree of the court of chancery be affirmed, with costs. *Decreed* also, that *E. Norwood*, the appellee, be perpetually enjoined from taking out execution, or proceeding on the decree of the court of chancery, hereby affirmed, for the sum of £3485 2 3, with interest and costs, except as to the costs adjudged by this court to the appellee on this appeal; and that the appellant, *S. Norwood*, be perpetually enjoined from taking out execution, or proceeding on the judgment by the executrix of *D. Dulany* against *E. Norwood* for the sum of £318 12 5, with interest and costs, referred to in the proceedings in this case; the said sums of £3485 2 3, and £318 12 5, having been embraced and settled between the parties in a subsequent decree of the chancellor between them, which last decree has been affirmed by this court during the present term.

THE COURT, on the second or last appeal, *affirmed* the decree of the court of chancery, (for £211 12 3, with interest from the 1st of December 1811, until paid, and costs,) with costs.

DECREES AFFIRMED, &c.

---

GRANTZ & FRALICK vs. THE STATE use of CRIST, *et ux.* DECEMBER.

APPEAL from *Frederick* County Court. The record states an affidavit made on the 23d of December 1811, by *Crist* and wife, before a justice of the peace, that the wife of *Crist*, before their marriage, had an illegitimate child by *Grantz*, which child had been supported by the mother, *(Crist's* wife,) from the 9th of March 1807, to the 14th of

Where under the act of 1796, ch. 34, directing the proceedings against persons guilty of fornication, the record stated the affidavit of the mother of an illegitimate child, the order on the other

of the child to pay for the support of the child for four years, &c. proof of demand, refusal, and a *scire facias*, (on a recognizance previously entered into by the father in the sum of $30, conditioned to indemnify the county, &c.) stating that the county had not been indemnified, &c. The defendant pleaded—1. That the child was, at its birth, committed to the custody of H B, and so remained. 2. That the mother never had the custody of the child. 3 A submission to arbitration, an award, and offer of compliance, which was refused. 4. That the sum of $30 a year was more than adequate for the maintenance of the child. 5. That the county had not been damnified  Issues to the 1st and 2d pleas, and general demurrers to the others, which demurrers the county court ruled good, and verdicts on the issues in fact for the plaintiff, and damages assessed to $120, and execution awarded for $30 debt and costs, which were taxed part in money and part in tobacco, with a memorandum that the judgment was to be released on payment of 120 dollars, and costs—On appeal, judgment *reversed*

*Quere.* Whether or not a judgment for costs taxed in tobacco since the act of 1806, ch. 41, s. 5, is not erroneous?

March 1809, (when she married *Crist*,) and by *Crist* and wife from the 14th of March 1809 to the 9th of March 1811, at which time the child was at the age of four years. Order by the justice on the father, *(Grantz,)* to pay *Crist* and wife $30 annually from the 9th of March 1807, as an adequate compensation for the maintenance of the said illegitimate child for every year until the child should arrive to the age of seven years. Demand and refusal being proved, a *scire facias* issued on the 6th of January 1812, on a recognizance entered into by the defendants in *Frederick* county-court, on the first Monday in February 1811, for the sum of $30 current money, conditioned that *Grantz* should indemnify the county from any charges that might accrue from the maintenance of a male illegitimate child, begotten by the said *Grantz* on the body of a certain *Christena Linebaugh,* &c. The *scire facias* stated that *Grantz* hath not indemnified the county of *Frederick* from any charges, &c. but assigns no sum or breach in which the county was damnified. The sheriff was commanded to make known to the defendants that they show cause why the said sum of $30 ought not to be levied of their bodies, goods, &c. The defendants pleaded five pleas—1. That the illegitimate child was at its birth committed to the custody of *Henry Bowse,* in whose custody it remained from the 9th of March 1807, continually, until the 9th of March 1811. 2. That the said *Christena* had not had the custody of the said child from the 9th of March 1807, until the 14th of March 1809; and that the said *Crist* and wife have not had the custody of the child from the 14th of March 1809 until the 9th of March 1811. 3. That *Crist* and wife ought not to have execution, because the illegitimate child mentioned in the said recognizance and order, was born on the 9th of March 1807, long after the birth of the illegitimate child mentioned in the recognizance on which the *scire facias* issued; and after the intermarriage of the said *Crist* with the said *Christena,* to wit, on the 2d of January 1811, *Crist* and wife, and *Grantz,* submitted to an award, &c. Award was made that *Grantz* should pay *Crist* and wife $80 on, &c. and for the payment of which he should give his bond. Bond tendered according to the award, which was refused by *Crist* and wife. That *Frederick* county, from the birth of the said child, hath in no wise been damnified or put to any charge or expense for the maintenance of the said illegitimate child, &c. 4. That *Crist* and wife ought not to have execution for the sum of $30 a year for four years—because $30 p. year, until the child arrived at the age of seven years, mentioned in the order, was more than adequate for the maintenance of the said child, until the said child should arrive at the age of seven years. 5. That *Frederick* county hath in no wise been damnified or put to any charge or expense by reason of or for the maintenance of the said illegitimate child. There were the general replications and issues joined to the first and second pleas, and general demurrers to the

3d, 4th and 5th pleas. The county court ruled the demurrers good. There were verdicts on the issues to the 1st and 2d pleas for the plaintiff, and damages assessed to $120. Execution awarded for $30 ct. mo. debt, and $11 60 and 797 w. *tobacco* costs. *Memorandum.* The plaintiff agrees to release the debt for which judgment is entered, on payment of $120, assessed by the jury, and costs. From this judgment the defendants appealed to this court.

*Taney,* for the Appellant. This is a proceeding under the act of assembly of 1796, *ch* 34 The recognizance was entered into in February 1811. The order of the magistrate requires *Grantz* to pay $30 a year from the 9th of March 1807, to the 9th of March 1811. It appears by the affidavit and order, that the mother of the child was married to *Jacob Crist* on the 14th of March 1809. Among other pleas, the defendants pleaded a submission by bond after the birth of the child, to stand to the award of the persons therein named; an award by them, and an offer on his part to perform. This submission was before the recognizance. If the act of assembly is considered to be for the benefit of the mother, and to enable her to support the child, then her husband, who was entitled to receive the money, might submit the claim to arbitration, and by the bond, award, &c. would be barred of his *scire facias.* The defendants also pleaded, that the county was not damnified. If the nonpayment of the money is, under the act of assembly, a breach of the recognizance, then this plea was good, and the plaintiff, instead of demurring, ought to have replied, setting out the order of the magistrate, the demand and refusal to pay, and there could be no breach of the recognizance before it was given. The mother maintained the child until her marriage, afterwards the maintenance was that of her husband, in suing for which the wife ought not to have joined. The judgment is given for the debt in the recognizance, with costs *taxed in tobacco.* By the act of 1806, *ch.* 41, *s.* 5. all taxations of costs must be in *dollars and cents.*

*Pigman,* for the Appellee. The demurrer to the 3d plea, and judgment of the court below, upon the demurrer, ought to be supported, because *Crist* and wife could not submit the matter in controversy to any arbitration. The act of 1781, *ch.* 13, the act of 1785, *ch.* 47, and the act of 1796, *ch.* 34, must all be taken together, and construed as if they were but one law, the two last being supplements to the first. The recognizance was given for the benefit of the state, to prevent bastards from being a burthen to the state, and to provide a competent support for them. By the acts of assembly above referred to, the county of *Frederick* was damnified, and received an injury from the time the child was born. In the order of the justice of the peace, set out in the record, it will be seen that *Christena Crist,* the wife of *Jacob Crist,*

1815.

Grantz & Fralick
v.
The State

had the care of the child from the 9th of March 1807, the day of its birth, for the order states, that on the 9th of March 1811, "it was of the age of four years." Mrs *Crist* had it from the 9th of March 1807 to the 14th of March 1809. and *Crist* and his wife had it from the 14th of March 1809 to the 9th of March 1811. The 3d plea also sets out, that the agreement to refer was made on the "2d of January 1811," so that by the defendant's own showing, from the 9th of March 1807, the birth of the child, to the 2d of January 1811, almost four years, no sort of provision was made by *Grantz* for its support. These acts of assembly have not left it in the power of the parents of bastards to say what shall or shall not be sufficient for their maintenance. If they had, these children would sometimes be provided for, and sometimes not; and the very evil these acts were made to prevent, would still exist. Formerly these wretched children were half naked and half starved, from the neglect of parents, who were ashamed to own them, or they were thrown upon the generosity of the public for charity, and became a nuisance to society; and this would be the case again, if fathers were permitted to delay their support as long as they pleased, or to fix for them, without affection and love, what they would judge to be enough at a protracted period. The act of 1796, *ch.* 34, lays the ground work of this *scire facias.* It says, upon the application of the mother, or other person, who has the care of the child, verified by oath or affirmation, that no money has been received from the father, or securities, for the use or maintenance of said child, a justice of the peace shall issue an order upon the father, &c. to pay such sum of money annually, not exceeding $30, as the said justice shall direct, and upon service of the order, and affidavit of the service, and that the money was not paid, the clerk is authorised to issue the *scire facias.* By turning to the order of the justice of the peace in the record, it will be seen all this has been done, and nothing more is required to entitle the state to the *scire facias* for the use of the mother, or other person, who has the care of the child. The father, to be sure, may appear to the *scire facias,* and prove, if he is able, that he has maintained the child, and taken due care of it; but he cannot, according to the good sense and policy of the laws, defend himself by showing there was an arbitration about it; nor can he say the county has not been damnified as long as he has made no provision for the child, because the very birth of the child, and no provision being made for it, is an injury to the county. The oath before the justice, and justices' order, entitles *Crist* and wife to receive the money; there could not be two orders, one for *Crist* and wife, and one for Mrs. *Crist* in her own name, her marriage prevented her from having an order for her separate use. There is a demurrer to the fourth plea, which was not considered in the court below sufficient, and ought not to receive a replication. The plea

states, that $30 per annum, allowed by the justice of the
peace in the order, is more than adequate for the mainte-
nance of the said child until it shall arrive to the age of
seven years. The act of 1796, *ch.* 34, gives the justice of
the peace a right to allow any annual sum, not exceeding
$30, of course no tribunal could legally alter the sum fixed
by the justice of the peace, as long as he is within the
limits of $30. The fifth plea to which a demurrer was
entered, is also insufficient in law. It states that *Frederick*
county hath not been damnified. The act of 1796, *ch.*
34, is the true source of authority for this *scire facias*, and
authorises it to issue upon the order contained in the re-
cord. It does not require any greater injury than the
want of provision for the child, and this want of provision
is to be made known by the mother, or the person or per-
sons having the care of the child, on oath, then the order
issues, and upon the service of it, and oath that it was
served, and the money therein mentioned was not paid,
the clerk is authorised to issue the *scire facias*; under this
act of assembly the county is then considered damnified.
It is contended that the judgment of the court, after the
verdict was given by the jury, is proper and good. This
*scire facias* is not like one to revive a judgment out of
date, or against executors, or on recognizances, issued at
common law. By the act of 1796, *ch.* 34, the court have
a right to decide on these recognizances, without any im-
parlance or delay, and to bring the matter fairly to trial in
a short summary way; and of course, as much strictness in
the proceedings is not required as upon our common writ
of *scire facias.* The jury in this case assessed the damages
to $120, and although damages could not be given on a
*scire facias* to revive a judgment in the general for delay
of execution, yet in the summary proceeding authorised by
the act of 1796, *ch.* 34, it must necessarily often be requir-
ed. The justice of the peace is authorised to allow as high
as $30 per annum for seven years, and where three or four
years becomes due, and an order issue, the damages must
exceed the sum of the recognizance; but though the verdict
of the jury is for $120, the judgment of the court is for the
penalty in the recognizance, and costs, as may be seen by
referring to the judgment, with a memorandum that the
plaintiff released the debt upon the payment of $120 by
the jury assessed. As this is a proceeding entirely de-
pending upon the acts of assembly, it is not meant to urge
any practice in *England,* or our own courts, upon the
common writ of *scire facias.* Under our acts of assembly
it is more a summary proceeding than any thing else, and
these acts do not confine the courts to any particular mode
of giving verdicts or judgments, but make it their duty to
decide upon the *"matter fairly, without any imparlance
or delay."* By turning to the order of the justice of the
peace, it will appear the oath was made on the 23d of De-
cember 1811, the same day the order was served. In the
third plea it is stated, the parties left the matter to arbi-

1815.

Harwood
vs
Rawlings

tration on the 2d of January 1811, long before any order passed, and the *scire facias* did not issue until the 6th of January 1812, almost one year after the submission mentioned by the defendants in the third plea; no provision being made for the support of the child. In the court of King's Bench, on an appeal, supposing error in a judgment giving on a *scire facias*, because the jury gave damages, the judgment was supported, because it had been given on the merits. In the case of *Knox vs. Costello, 3 Burr.* 1791, Mr. Justice *Wilmot*, (after stating the case particularly,) said "the court ought to support a judgment recovered upon the merits."

JUDGMENT REVERSED.